[No. 25939. Department One. May 11, 1936.]

WESTERN STATES GROCERY COMPANY, *Respondent,* v. JOSEPH GLUCK *et al., Appellants.*[1]

*Eggerman & Rosling,* for appellants.

*Palmer, Askren & Brethorst (B. E. Lutterman,* of counsel), for respondent.

[1]Reported in 57 P. (2d) 1061.

GERAGHTY, J.—This action was brought by the plaintiff, Western States Grocery Company, against defendants, Gluck and wife, to recover for breach of warranty in three contracts for the sale of quantities of canned salmon, made in the name of Demmert Packing Company, the canners, but alleged to have been in fact made on behalf of the defendants, as the owners of the salmon, and the real parties in interest. After trial to the court without a jury, findings were made favorable to the plaintiff, and judgment entered accordingly. The defendants appeal. The husband will be referred to as if sole appellant.

The appellant was engaged in the brokerage business in Seattle and in advancing financial assistance to concerns engaged in the business of packing salmon. March 19, 1932, he entered into a written contract with Charles W. and Emma F. Demmert, husband and wife, and George Demmert, co-partner, doing business as Demmert Packing Company and conducting a salmon cannery in Alaska. Under the terms of the agreement, the Demmerts were to engage in the canning and packing of fish and to hold in trust the possession of consigned materials and supplies furnished to them by appellant for use in their operations, "the possession and title of which is pledged to the party of the first part as security for the obligation of second parties, as hereinafter provided." Appellant was to cause to be delivered to the Demmerts such supplies, including boxes and cans, as would be required, and all advances made were to draw interest at the rate of eight per cent per annum from the date when made until paid. Appellant was to act as agent and guarantee the account. Title to the cans was at all times to vest in appellant "until the completed product packed with salmon shall have been sold," and, until sale, the supplies were to be considered merely

as consignment of raw material for the purpose of manufacture, and title to the contents of the cans should follow the cans until such time.

To secure advances made by him, appellant was given a prior lien on the pack, which was to be consigned to him at Seattle, and the bills of lading forwarded to him. He was to advance to the Demmerts seventy-five cents a case upon the salmon shipped, but he was authorized to advance further sums for supplies, subject to the terms of the contract. He was authorized to hypothecate or pledge the pack to reimburse himself for money advanced. It was agreed by the Demmerts that all salmon shipped should be of good merchantable quality and condition, subject to inspection. Sections seven and eight of the contract follow:

"7th: It is stipulated and agreed that the party of the first part shall have the option, and he is hereby authorized by the parties of the second part to liquidate the whole or any part of the liens, advances and charges which the party of the first part may have against said salmon and that nothing herein contained shall be construed to conflict with the free exercise of such option to liquidate and pay, express authority being given to the party of the first part to sell at prevailing market prices such salmon as is needful to realize the aggregate of such liens, advances and charges.

"8th: The party of the first part shall and will account to the parties of the second part for all salmon shipped to the party of the first part by the parties of the second part, such accounting to contain details of receipts, expenses, sales and any and all things relating to said salmon, and the party of the first part hereby stipulates and agrees to pay to the parties of the second part all proceeds of sales, after deductions herein provided for shall have been made."

Under § 9 of the contract, the appellant was constituted the sole and exclusive agent of the Demmerts

for the purpose of effecting and negotiating the sale of all their salmon pack during the year 1932, for which he was to be paid a commission of ten per cent of the net sale price as and when the proceeds were received by the parties of the second part.

At the time of the execution of the contract, a second contract was entered into between the same parties and the Seattle Discount Corporation, by the terms of which certain mortgages held by the discount corporation upon property of the Demmerts were to be subordinated to the lien of mortgages received and accepted by appellant, for the advances of credit and supplies under his contract. Appellant had advanced funds to the Demmerts, under like arrangements, for the two preceding years.

The contract was carried out by the parties, and appellant supplied the Demmerts with materials, cans and equipment, and funds for pay roll, during the season of 1932, to the extent of between seventy-five and eighty thousand dollars. The salmon pack was consigned to him at Seattle and stored for sale.

Canned salmon is sold to the trade through brokers. The sales here involved were made through C. F. Buelow & Company, a corporation engaged in business in Seattle, C. F. Buelow being the manager. For its sales, the Buelow Company received a commission of five per cent, taken out of the ten per cent commission payable to appellant under his contract. Buelow & Company, in turn, divided its commission with its eastern correspondents from whom it received the orders. Before the sale of any of the salmon pack, Buelow & Company procured a letter from the Demmerts, in which they guaranteed that all the salmon packed and shipped by them would be merchantable and of first class quality, fit for consumption as human

food, and would, in all respects, comply with the rules and regulations of the Federal pure food law.

The three sales involved were made to Lange Grocery Company at Sparta, Wisconsin, the respondent, Western States Grocery Company, Omaha, Nebraska, and to Barton & Wheadon, Elmira, New York. The claims of Barton & Wheadon and Lange Grocery Company were assigned to the respondent for collection. While in the possession of the purchasers, portions of these shipments were condemned, as unfit for use, by the Federal authorities, and this action was brought for the resulting damages. No question is raised as to the fact of condemnation or the measure of damages.

The trial court was of the opinion that appellant did not sell as agent for a disclosed principal, but as owner, through the Buelow Company, and that, while the sales contract was executed by the brokerage firm in the name of the Demmerts, the appellant was, in fact, the undisclosed principal.

The contention of the appellant is that he had only a special property in the salmon to secure the advances made by him, and that whatever he did in the conduct of the sales was done in virtue of his power as sales agent for the owners.

The written sales contract named the Demmert Packing Company as packer and owner, and contained a guaranty that the salmon covered by the contract conformed to the requirements of the national food and drug act. The appellant's name appears nowhere in the sales transaction, nor did the purchasers know of his connection with it.

In *Whitney-Ellsworth Co. v. Anderson Mercantile Co.,* 160 Wash. 108, 294 Pac. 548, where a similar contract was involved, the court referred to the difficulty of characterizing it by name, saying:

"As we read the contract, and considering it as a whole, it is fair to both parties, and has only such provisions for the security of the party making advances as are customarily required in doing business with one who has insufficient capital and must do business on the advances of others. . . .

"We are not particularly concerned as to what name be given to the arrangement regarding the cans. Appellant argues that it is a bailment—probably it is. The trial court at first called it a conditional sale, but to us it does not seem to be that. Respondent seems to prefer not to give it a name and so do we."

Read as a whole, the contract cannot be construed as an absolute sale by the Demmerts to the appellant. He had two rights under the agreement. In the first place, he was to have possession of, and a special property in, the salmon until his advances were repaid out of the proceeds; and, in the second place, he was constituted the sales agent of the packers, with authority to sell on the market at going prices. There can be no question that, if the Demmerts had chosen to pay off their obligations to the appellant, they could have done so and taken over full control of the salmon.

Nor were the respondents deceived in any way, since, on its face, the contract was with the Demmert Company, the packers, who ordinarily would be the proper parties to execute a guaranty of a product.

It may be conceded that, regardless of the character of his property in the salmon, the appellant could have assumed responsibility for its quality, but that would have required what is wanting here, an express agreement on his part. As we have seen, appellant was not himself. the broker making the immediate sale. Under his general authority as sales agent, he employed the Buelow Company to make the sale, in accordance with the custom of the trade. In the transaction, the respondent knew only two parties, the

216

Demmerts, as owners, and Buelow Company, as brokers.

The judgment against appellant can rest only on the assumption that he was the absolute owner of the fish and used the name of Demmert Company in the sales contract in lieu of his own. This view is not sustainable upon the record.

The judgment will be reversed, and the case remanded with direction to dismiss.

MILLARD, C. J., MITCHELL, STEINERT, and TOLMAN, JJ., concur.